## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KELLY HUNTER,

      **Plaintiff,**

      **v.**

COSTCO WHOLESALE
CORPORATION,
      **Defendant.**

**Case No. 2:21-cv-02175-HLT**

## MEMORANDUM AND ORDER

Plaintiff Kelly Hunter brings claims for sex, age, and disability discrimination and retaliation under Title VII, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act Amendments Act ("ADAAA"). Defendant Costco Wholesale Corporation moves for summary judgment (Doc. 54) and to strike three declarations that Plaintiff attaches to her summary judgment opposition and for sanctions (Doc. 61). All Plaintiff's claims lack merit or have not been preserved. The Court therefore grants the motion for summary judgment. The Court also grants the motion to strike because Plaintiff failed to disclose the declarants under Rule 26 and has failed to show a substantial justification or lack of prejudice. But the Court denies Defendant's request for sanctions.

## I.    BACKGROUND[1]

Defendant is a membership warehouse retailer that specializes in bulk goods sales. SOF 1. Defendant hired Plaintiff as a food court assistant in its Lenexa, Kansas warehouse on March 13,

---

[1] The facts are either undisputed or construed in favor of Plaintiff as the nonmoving party. Additional facts are included throughout the order for clarity. The Court is disappointed that the parties were unable to stipulate to any facts in the pretrial order when over seventy facts in Defendant's motion for summary judgment are undisputed. This antagonistic inefficiency is one of the reasons the District of Kansas has recently adopted page limits for briefing. A complete failure to stipulate to any facts when so much of this case is not disputed is unproductive for both the parties and the Court.

2019. SOF 4. Plaintiff is a diabetic and has received Social Security Disability Insurance for her back condition. SOF 6-7. On June 12, 2019, Plaintiff presented Defendant a doctor's note stating that she had a thirty-pound lifting restriction and needed access to juice while at work. *See* SOF 16. Plaintiff told Lenexa Warehouse Assistant General Manager Brian Crowder that her restriction only applied to pushing carts. SOF 17. Crowder told Plaintiff that work restrictions are not task-specific, so he asked Plaintiff to get clarification from her doctor and in the interim "not lift anything" over thirty pounds. SOF 18.

Five days later, Hunter provided a work restriction form that said she had a permanent work restriction preventing her from lifting, carrying, pushing, or pulling objects weighing thirty pounds or more. SOF 19. The next day, Defendant assigned Plaintiff "Temporary Transitional Duty" as a front-end assistant. SOF 20. Plaintiff "was primarily assigned to folding clothes." *Id.* Defendant scheduled a "Job Assessment Meeting" to determine whether Plaintiff's permanent restrictions could be accommodated. SOF 22.

Plaintiff remained on temporary transitional duty from June 18, 2019, to about July 12, 2019. SOF 23. Plaintiff requested and received time off from July 12, 2019, until July 24, 2019, because she went on vacation and then aggravated her back while riding roller coasters. SOF 24.[2] The job assessment meeting was held on July 22 with Plaintiff, members of Defendant's Integrated Leave and Accommodations Team, and a third-party occupational consultant. SOF 25. Plaintiff's work restriction form did not reference a need for juice, but that need was discussed at the

---

[2]  Plaintiff does not dispute that she "requested to be off and not scheduled for the days in question." SOF 24.

meeting.[3] SOF 33. Defendant agreed to allow Plaintiff to keep juice right outside the food court at the supervisor's station or in her locker and step away when she needed it. *Id.*[4]

Regarding Plaintiff's thirty-pound lifting, carrying, pushing, or pulling restriction, "[Defendant] indicated that a rack full of dough balls, when proofing them and putting them into the cooler, this would be greater than 30 pounds of push/pull force." SOF 37.[5] Defendant uses the following strength chart to illustrate what it believes are the essential physical functions of the food court assistant position:

| Strength | 0-10 lbs. | 11-25 lbs. | 26-50 lbs. | 51-75 lbs. | >75 lbs. | Max. |
|---|---|---|---|---|---|---|
| Lift/lower below waist | F (4,5,6) | O (4,6) | O (6) | *O (5) Team lift | N | Case of pizza sauce (40lbs), * pizza oven conveyor rack (75lbs.) team lift |
| Lift/lower between waist and chest | C (4,5,6) | F (4,6) | O (6) | *O (5) Team lift | N | Case of pizza sauce (40lbs), * pizza oven conveyor rack (75lbs.) team lift |
| Lift/lower above Shoulder | O (4,6) | O (4,6) | O (6) | N | N | Case of cheese (30lbs) |
| Carry | O (1,4,5,6) | O (1,4,6) | O (6) | N | N | Case of pizza sauce (40lbs) |
| Push | O (1,4,5,6) | O (4,6) | O (6) | O (6) | N | Pallet of dough (44lbs), full flatbed (50-70lbs.) |
| Pull | O (1,4,5,6) | O (4,6) | O (6) | O (6) | N | Pallet of dough (43lbs), full flatbed (50-70lbs.) |

---

[3]   Plaintiff attempts to dispute this fact by stating that her original doctor's note mentioned a need for juice at work. This does not controvert the fact that there was no mention of a need for juice on Plaintiff's work restriction form.

[4]   Plaintiff attempts to dispute this fact by stating that keeping juice in her locker was not helpful. Plaintiff's belief about the sufficiency of the accommodation does not controvert whether the accommodation was made. Plaintiff further attempts to controvert this fact by pointing to her deposition testimony indicating that at one point one employee told her not to leave the food court and one time another employee accused her of stealing a cup to take her medication. But Plaintiff goes on to testify that Food Court Manager Conor Riley always told her that she did the right thing by taking care of her blood sugar lows. Hunter Dep. 246:21-248:15. The employee who told Plaintiff she could not leave the food court did not know that Plaintiff had diabetes and after the incident Plaintiff was told she was not in trouble. *Id.* at 247:13-248:15.

[5]   Plaintiff's response to this fact is sloppy and not a prime example of compliance with District of Kansas Rule 56.1. It is Plaintiff's burden to show what aspects of Defendant's facts are disputed. As far as the Court can tell, Plaintiff disputes the lifting requirements of the food court position. But Plaintiff does not controvert that food racks are moved or that food racks require the ability to push and pull more than thirty pounds.

SOF 12.[6]

Cathy Nierstheimer, the Lenexa Warehouse General Manager, testified that Plaintiff's restriction made her unable to do the "primary tasks or essential functions" of the food court assistant position. SOF 36.[7] Plaintiff asked if another worker could move racks while she cleaned counters, but Defendant claimed that it could not excuse her from an essential function of her job. SOF 37.[8] Defendant considered moving Plaintiff to an open "Front End" position, but it could not accommodate Plaintiff's thirty-pound push/pull restriction in that role either. SOF 38.[9] Defendant ultimately "determined that it could not modify [Plaintiff's] role in the Food Court in any way that would allow her to work with her then[-]existing restrictions." SOF 40. Defendant placed Plaintiff on unpaid leave. *See id.*

The day after the job assessment meeting, Plaintiff brought in a new work restriction form "increasing her lift/carry restriction from 30 pounds to up-to 40 pounds or more 'occasionally' and eliminating any push/pull restriction." SOF 42. Defendant returned Plaintiff to work in the food court the next day in light of these revisions. SOF 43.

After the meeting, Plaintiff would leave the food court at least twice a week to get juice, soda, or candy and "[w]hatever I did, no matter what it was, they'd say I did the right thing." SOF 34 (alteration in original, emphasis omitted). Plaintiff picked up extra hours, but she never had to

---

[6]   Plaintiff disputes this fact by arguing that the heaviest item in the food court is a box of dough that weighs less than twenty-five pounds and that managers have accommodated food court employees by assisting them with the lifting and putting away of bulky items. Doc. 60 at 6. As the Court discusses in more detail within, none of Plaintiff's argument controverts that a <u>pallet</u> of dough weighs over forty pounds and that <u>pushing</u> and <u>pulling</u> a pallet of dough were essential functions of Plaintiff's position in the food court. *See infra* § III.D.4.

[7]   Plaintiff's attempt to controvert does not address this aspect of the fact.

[8]   Plaintiff does not clearly controvert that this exchange occurred.

[9]   Plaintiff's response again lacks transparency. It does not clearly controvert anything above.

push carts after submitting her doctor's note. SOF 44. On August 1, 2019, Plaintiff submitted a doctor's note removing all work restrictions. SOF 45.

A few days later, Plaintiff talked with Niersheimer and Crowder about working a limited part-time ("LPT") schedule due in part to her "kids going back to school." SOF 46-47. After that, Plaintiff provided a work restriction form dated "August 8, 2019, limiting her ability to work to only two, five-hour shifts per week." SOF 53. The "Integrated Leave and Accommodation Specialist advised Niersheimer and Crowder that because [Plaintiff's] hours restriction was 'less [than] what we require for LPT (they should have 3 days a week up to 8 hours a day of availability)' [that] a leave of absence for the duration of the restrictions (10/15/19) is appropriate." SOF 55 (final alteration in original).[10] Plaintiff was placed on a leave of absence. *See* SOF 56.

Plaintiff "was on a leave of absence from August 9, 2019, until October 1, 2019." *Id.* Plaintiff gave Defendant a work release dated October 1 that allowed her to work without restrictions, so she was returned to work as a food court assistant in October 2019 and worked in that capacity until November 13, 2019. SOF 64. Plaintiff had worsening back pain at that time, so she "submitted a Request for Leave of Absence for the dates of November 15, 2019[,] until November 21, 2019, which [Defendant] granted." SOF 65.[11] Plaintiff submitted an updated doctor's note that released her to work with no restrictions on November 22, 2019. SOF 66. But Plaintiff was hospitalized on November 21, 2019, and she told Defendant that she had lost her ability to walk. SOF 67. Plaintiff ultimately never returned to work for Defendant, SOF 68, although the parties continued to discuss Plaintiff's restrictions and job options as discussed below.

---

[10] Plaintiff attempts to controvert this fact with the three declarations subject to Defendant's motion to strike. Two of those declarations state that LPT employees work less than 24 hours a week. Even if the Court considered those declarations, however, they do not controvert that LPT workers must be <u>available</u> for three days out of the week for up to eight hours each day. Plaintiff's proposed restriction was two days a week for five hours each day.

[11] Nothing cited by Plaintiff controverts this fact.

On December 18, 2019, Plaintiff gave Defendant a work status form that released her to work with a "no bending/stooping" restriction and a weight restriction of ten to twenty pounds. SOF 69. On January 14, 2020, Plaintiff gave Defendant a doctor's note that only contained a thirty-pound lifting restriction. SOF 71. Nierstheimer offered to return Plaintiff to work on the front end. SOF 72. Plaintiff initially accepted this offer but then told Defendant she first wanted to go through a doctor-recommended "functional capacity evaluation" before returning to work. SOF 73. So Plaintiff stayed on a leave of absence. SOF 74.

In February 2020, Plaintiff gave Defendant a work restriction form with a thirty-pound lift, carry, push, and pull restriction. SOF 75. Plaintiff was also limited to working three days a week for five hours a day. *Id.* Defendant invited Plaintiff to participate in another job assessment meeting. SOF 76. Defendant held the meeting for Plaintiff on March 9, 2020, but Plaintiff did not attend. SOF 77. Defendant determined it was unable to offer Plaintiff a position with or without accommodation and left Plaintiff on a leave of absence. *Id.*

Following the March 2020 meeting, Plaintiff received a weekly email containing job postings for any open and available assistant-level positions at Kansas City-area warehouses. SOF 78. The emails contained instructions on how to express interest in a position and directed Plaintiff to let Defendant know if her work restrictions changed. *Id.* In August, Plaintiff expressed interest in a "Photo Lab" position, but Defendant wrote Plaintiff a letter saying it did not appear she could perform the essential functions of that position due to her lifting restriction. SOF 81-82.

On April 15, 2021, Defendant wrote Plaintiff a letter requesting that she supply "documentation from [her] health care provider stating the date it is anticipated that [she] will be released to work with or without restrictions or whether it is unknown" by May 1, 2021. SOF 86 (alterations in original). Plaintiff responded on April 26 that she would not be able to schedule an

appointment by the deadline, but she would not be able to return to work regardless for Covid-related reasons. SOF 87. She also stated that she did not wish to resign, and that she was optimistic that health conditions would change so that she could work again. *Id.* Plaintiff sent multiple subsequent communications that she was unable to work since March 2020 due to Covid. SOF 88-89. Defendant terminated Plaintiff on May 24, 2021. SOF 90.

Discovery was complete by the time the pretrial order was filed on October 7, 2022. Doc. 53 at 21. Unopposed discovery could continue only so long as it did not delay the briefing of or resolution of dispositive motions or other pretrial preparations. *Id.* Defendant filed its motion for summary judgment on the dispositive-motion deadline, October 21, 2022. Doc. 54. Plaintiff filed her response on December 6, 2022, attaching the declarations of Kevin Roberson, Kevin Hines, and Bill Ogle, which were dated November 30 and December 5, 2022. Docs. 60-21; 60-24; 60-26. Plaintiff never supplemented her Rule 26 disclosures to list Roberson, Hines, and Ogle.

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court must exclude evidence that does not comply with Rule 26 unless the violation was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1); *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 631 (10th Cir. 2008).

## III.    ANALYSIS

Plaintiff asserts sex, age, and disability discrimination and retaliation claims. Defendant raises a failure-to-exhaust affirmative defense for some claims, so the Court addresses the potentially unexhausted claims before turning to Plaintiff's claims under Title VII and the ADEA. The Court then addresses Plaintiff's various claims under the ADAAA and her claim for retaliation. Finally, the Court considers Defendant's motion to strike.

### A.    Failure to Hire in 2018, Sex-Based Hostile Work Environment, Disability-Based Failure to Promote

Defendant preserved an affirmative defense of failure to exhaust as to the following claims: Plaintiff's 2018 failure-to-hire claim under the ADAAA, Plaintiff's hostile work environment claim under Title VII, and any claim based on Plaintiff's failure-to-promote theory under the ADAAA. Doc. 53 at 19. Plaintiff concedes that her 2018 failure-to-hire and hostile work environment claims were not exhausted before the EEOC and explains that she uses the unexhausted claims as context for her other claims only. The Court thus grants summary judgment to Defendant on these two liability theories. Plaintiff argues, however, that she preserved a failure-to-promote claim because it is synonymous with her failure-to-accommodate claims at issue here. Doc. 60 at 50.

Failure to file an EEOC charge for a discrete employment incident permits the employer to raise a failure-to-exhaust affirmative defense. *See Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1185 (10th Cir. 2018). The exhaustion rule has two purposes: (1) to give notice to the charged party, and (2) to give the EEOC an opportunity to investigate the claims so that it can encourage

settlement and voluntary compliance with federal law. *See Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). Therefore, a plaintiff's claims are generally limited "by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.* (citation omitted). A plaintiff's allegations are liberally construed, but "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.* (emphasis and citation omitted). Each discrete incident of alleged discrimination or retaliation must be exhausted. *Jones v. U.P.S., Inc*., 502 F.3d 1176, 1186 (10th Cir. 2007).

Here, Plaintiff alleges in the pretrial order that she was denied a promotion to vault clerk in June 2019 in violation of the ADAAA. Doc. 53 at 5-6, 16. Notably, Plaintiff provides no record citations to controvert Defendant's Statement of Fact 117, which claims she first raised a failure-to-hire claim in the pretrial order. She only states that the fact is disputed but not material. In her brief, Plaintiff points to the following details in her charge as having exhausted a failure-to-promote claim:

> [Plaintiff] wears an insulin pump and a continuous glucose monitor . . . [Plaintiff] cannot hear her alarm where she works (in the food court) because the machines are so loud. When [Plaintiff] informed the admin [sic] staff and sought an accommodation, she was unjustly denied her request. . . . [Plaintiff] has been ordered to . . . continue working in the same area.

Doc. 60 at 52 (emphasis omitted). Plaintiff was represented by counsel at the time of her charge.

These allegations do not reasonably encompass an agency investigation into a failure to promote. Failure to promote is a distinct instance of discrimination. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) ("Discrete unlawful practices include termination, failure to promote, denial of transfer, and refusal to hire."); *see also Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 796-97 (10th Cir. 2020) (en banc) (discussing distinction between

disparate treatment and failure-to-accommodate claims). There are no facts alleged about <u>any</u> <u>claim</u> regarding an alleged failure to promote in the EEOC charge. There are only generalized failure-to-accommodate allegations. Thus, the Court holds that Plaintiff failed to exhaust any claim based on her failure-to-promote theory and grants summary judgment to Defendant.

**B.      Title VII Sex-Based Discrimination Claim**

In addition to her admittedly unexhausted sexual harassment claim, Plaintiff's opposition to summary judgment appears to argue a sex-based disparate treatment claim under Title VII. Doc. 60 at 70-71. The Court holds that such a claim is not contained in the pretrial order and not preserved in the case. *Zenith Petroleum Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016) ("[A] district court has authority to sua sponte confine the litigation to the claims and issues identified in the pretrial order."). There is nothing in the Title VII claim section in the pretrial order beyond a sexual harassment claim, and perhaps a retaliation claim related to Plaintiff reporting that harassment. The Court will not entertain a claim Plaintiff failed to give any reference to in her claim section.[12]

**C.      ADEA Discrimination Claim**

Plaintiff alleges that she sought an accommodation to work a LPT schedule, but this was denied because it is only given to younger employees who are in college. Doc. 53 at 15. Specifically, Plaintiff requested the ability to work two days a week for five hours a day, and this request was denied. *See* Doc. 60 at SOF 53, 55-56.[13] Plaintiff believes Defendant's denial was age discrimination under the ADEA. Doc. 53 at 15. Defendant argues that Plaintiff cannot establish

---

[12]   Plaintiff seeks no leave to amend the pretrial order, let alone any good cause under Rule 16 to justify such an amendment at this stage. And such a tardy amendment would be prejudicial to Defendant such that amendment under Rule 15 would also be inappropriate given that discovery is closed and summary judgment briefing is complete.

[13]   Plaintiff's disputes with these fact statements do not controvert the aspects relied on by the Court.

that age was the "but for" cause of denying her the ability to work limited part-time. Doc. 55 at 44.

The *McDonnell Douglas* framework applies to circumstantial ADEA claims. *Cox v. Dex Media, Inc.*, 2022 WL 3079102, at *3 (10th Cir. 2022). A plaintiff must first present a prima facie case. *Id.* A plaintiff establishes a prima facie age discrimination case by showing (1) she belongs to the ADEA-protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) her employer treated her less favorably than other employees outside the protected class. *Id.* (citing *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010)). But-for causation is the standard to succeed on an ADEA discrimination claim. *Id.*

Here, Plaintiff primarily relies on her own testimony that she believed there were young college students who received an LPT schedule, while she, a person just over forty, was denied the ability to work an LPT schedule. But Plaintiff fails to point to <u>any</u> young person who was not required to be <u>available</u> for three days a week and up to eight hours a day, which Defendant's integrated leave and accommodation specialist stated was a requirement for being allowed to work an LPT schedule. SOF 55. Plaintiff identified a college student named Kelli that she believed was LPT, but Plaintiff admitted that she did not know the total number of hours Kelli worked a week. Hunter Dep. at 111:6-112:19. Plaintiff also claimed that there was an employee in the bakery department who worked "college hours." *Id.* at 253:11-25. But Plaintiff has provided no evidence to controvert that all LPT employees, regardless of age, were nevertheless <u>available</u> for three days a week and up to eight hours a day. *See* SOF 55.[14] Therefore, Plaintiff has failed to show that she

---

[14]   For the reasons explained below, the Court does not consider the three declarations. But, even if the Court were to consider the declarations, they simply state that at least some LPT employees <u>worked</u> less than twenty-four hours a week and do not controvert this <u>availability</u> requirement. Additionally, the declarations state that LPT status was <u>not</u> just reserved for young students, which directly contradicts Plaintiff's claim.

was treated less favorably than other employees outside the protected class. No reasonable jury could hold for Plaintiff on this claim, so the Court grants summary judgment for Defendant.[15]

### D.      ADAAA Discrimination Claims

Plaintiff asserts multiple claims in the pretrial order under the ADAAA. Unfortunately, Plaintiff often conflates failure-to-accommodate and disparate treatment claims, which makes parsing the claims very difficult. Based on the claims stated in the pretrial order and the arguments advanced in response to the summary-judgment motion, the Court discerns the following claims: (1) a failure to accommodate Plaintiff's inability to push carts such that she could not pick up extra shifts; (2) a failure to accommodate Plaintiff's need for disability-accessible parking; (3) a failure to accommodate Plaintiff's diabetes; (4) a failure to accommodate Plaintiff's lift, carry, push, and pull restrictions; and (5) disparate treatment in placing her on unpaid leave and terminating her because she was disabled (namely, that she had lift, carry, push, and pull restrictions).

The Court addresses the claims in turn.

### 1.      Failure to Accommodate: Cart-Pushing & Extra Shifts

Plaintiff claims that Defendant refused her request not to push carts when she worked as a front-end assistant. Doc. 53 at 15-16. Plaintiff also claims that she was denied the ability to pick up extra shifts as a result. *Id.* at 16.[16] Defendant argues that there is no evidence that Plaintiff was unable to pick up extra shifts due to her inability to push carts. Doc. 55 at 37.

A plaintiff demonstrates a prima facie failure-to-accommodate case by initially showing that (1) she was disabled, (2) she was otherwise qualified, (3) she requested a plausibly reasonable

---

[15]   The Court need not address Defendant's alternative argument.

[16]   Plaintiff frames her cart pushing and extra shift arguments as separate ADAAA claims (her first and third in the pretrial order). Doc. 53 at 15-16. The Court analyzes Plaintiff's arguments together because there is no evidence that Plaintiff pushed carts other than while picking up extra shifts outside the food court.

accommodation, and (4) the defendant refused to accommodate the disability. *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020).

Here, the undisputed facts show that Plaintiff wanted to pick up extra hours during her probationary period in April or May 2019. Hunter Dep. at 187:1-15. She pushed carts for over two hours one day while picking up extra hours on the front end. *Id.* at 191:6-11. She asked not to do carts again because her back hurt. *Id.* at 191:1-4. But beyond this, there is no evidence that she disclosed a disability or made a disability accommodation request. The employee assigning tasks believed Plaintiff's back hurt because she had worked with carts too long (rather than the standard thirty minutes). *Id.* at 192:1-4. The employee promised to not let that happen again, and he assigned Plaintiff to work carts one more time. *Id.* at 191:6-11. Plaintiff subsequently brought in a doctor's note with a weight restriction, and she was never asked to push carts again. SOF 16, 44. She continued to pick up extra hours, just in the evening instead of in the morning, when there was no cart pushing. SOF 44.

These undisputed facts show that Plaintiff was never asked to push carts once she disclosed her disability. *Id.* Therefore, she was not denied an accommodation, and no reasonable jury could conclude otherwise. Summary judgment for Defendant is appropriate on this failure-to-accommodate claim.

## 2.   **Failure to Accommodate: Accessible Parking**[17]

Plaintiff claims that Defendant did not allow her to park in an accessible parking spot despite her having a disability license plate. Doc. 53 at 16; SOF 99. Defendant argues it was not aware of Plaintiff's need or request to use accessible parking. Doc. 55 at 38-39.

---

[17]   The Court does not discern a disparate treatment claim related to Plaintiff's use of accessible parking in the pretrial order. And Plaintiff's response brief addresses this issue in the context of a failure to accommodate. *See* Doc. 60 at 61. Even if Plaintiff had preserved such a claim, she has not presented any evidence that she suffered an adverse action in connection with her use of accessible parking.

As stated above, to establish a failure-to-accommodate claim a plaintiff must make an initial showing that (1) she was disabled, (2) she was otherwise qualified, (3) she requested a plausibly reasonable accommodation, and (4) the defendant refused to accommodate the disability. *Aubrey*, 975 F.3d at 1005. And "in the context of a failure-to-accommodate claim, once an employee 'make[s] an adequate request [for an accommodation], thereby putting the employer on notice,' an employer's 'failure to offer a reasonable accommodation to an otherwise qualified disabled employee is unlawful discrimination.'" *Exby-Stolley*, 979 F.3d at 797 (alterations in original) (internal citations and emphasis omitted).

Here, no reasonable jury could conclude that Plaintiff made an adequate request to use accessible parking as an accommodation and that Defendant then failed to offer a reasonable accommodation. Although an accommodation request "does not have to be in writing, be made by the employee, or formally invoke the magic words reasonable accommodation, it nonetheless must make clear that the employee wants assistance for his or her disability." *E.E.O.C. v. C.R. Eng., Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011) (citation and quotation marks omitted). "[T]he employer must know of both the disability and the employee's desire for accommodations for that disability." *Id.* (citation omitted).

Nowhere in her testimony does Plaintiff say that she requested to use accessible parking as an accommodation for a disability. Rather, Plaintiff testified that when she tried to use accessible parking, a manager told her to move her car to the back of the lot where employees typically park. Hunter Dep. 90:12-91:6. This happened several times. *Id.* On one occasion, Plaintiff asked if she could park towards the front of the parking lot, but the same manager denied the request. *Id.* at 95:16-18. Plaintiff explained that she had seen "other employees park near the carts" rather than

the last two rows. *Id.* at 95:17-18. But still, Plaintiff did not ever ask to park in accessible parking as an employment accommodation.

Plaintiff argues in her opposition that several managers knew that she was a diabetic.[18] Doc. 60 at 61. But she does not explain how accessible parking was necessary to accommodate her diabetes, let alone that Defendant was aware of such a necessity. Additionally, she claims at one point in her deposition testimony that the manager who told her to park in the back of the lot knew that Plaintiff had a disability license plate, and that the manager told Plaintiff it "did not matter." Hunter Dep. at 91:17-18, 95:22-23. But she also testified that she never told the manager about the plate and was just guessing the manager knew about it because they had stood together near her car. *Id.* at 91:9-20.

Even assuming at the summary judgment phase that Plaintiff's equivocal testimony is correct—at least one manager knew about Plaintiff's diabetes and license plate designation—that does not mean that Defendant knew that Plaintiff wanted to park in accessible parking as an employment accommodation for her diabetes. *Cf. Jones*, 502 F.3d at 1194 ("Without knowledge of Mr. Jones's belief that he is entitled to an accommodation for a perceived disability, UPS could not interpret his requests to return to work as requests for an accommodation."). Nor is it obvious why Plaintiff's diabetes would require such an accommodation because none of her doctor's notes mention a diabetes-related walking restriction. Accordingly, Defendant is entitled to summary judgment on Plaintiff's failure-to-accommodate claim regarding accessible parking.

---

[18]   As discussed in the next section, it is far from clear that any claims regarding accommodation of Plaintiff's diabetes were preserved in the pretrial order.

### 3.      Failure to Accommodate: Diabetes

While the parties grapple with whether Defendant accommodated Plaintiff's diabetes, there is virtually nothing in the pretrial order to preserve a claim related to Plaintiff's diabetes. There is one passing reference to Plaintiff's need for juice in her factual allegations, Doc. 53 at 6, but Plaintiff provides no allegations or claims about a lack of an accommodation for her diabetes in her legal claims.

"[A] district court has authority to sua sponte confine the litigation to the claims and issues identified in the pretrial order." *Zenith Petroleum*, 656 F. App'x at 887. But pretrial orders are "liberally construed to cover any of the legal or factual theories that might be embraced by their language." *Id.* (quoting *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979)).

Because Plaintiff's ADAAA claim section references her initial doctor's note, her factual allegations mention that the doctor's note stated a need for juice, and it appears Defendant was not prejudiced by Plaintiff's failure to make more detailed allegations, the Court will liberally construe the pretrial order as covering a failure-to-accommodate diabetes theory. But Plaintiff is cautioned that such a haphazard approach runs the risk of abandoning claims.[19]

Turning to Plaintiff's claim that Defendant failed to accommodate her diabetes, Defendant argues it is entitled to summary judgment because Plaintiff has not shown that she requested any plausibly reasonable accommodation for her diabetes, and regardless, it made reasonable accommodations for her diabetes by allowing her to carry her medical alert bracelet and leave the food court area to get juice, soda, etc. Doc. 55 at 38-40. Plaintiff essentially argues that there is EEOC guidance that Plaintiff should have been able to wear her medical alert bracelet as a necklace

---

[19]   To this end, the Court does not discern a disparate treatment claim associated with Plaintiff's diabetes in the pretrial order. Even if Plaintiff had preserved such a claim, she has not presented any evidence from which a reasonable jury could conclude that she was placed on unpaid leave or terminated due to her diabetes. Therefore, such a claim would fail summary judgment.

rather than keep the bracelet in her pocket and that Plaintiff should have been able to keep snacks and juice in the food court area. Doc. 60 at 60.

Plaintiff provides no evidence that she asked to wear her medical alert bracelet as a necklace, so she cannot establish a failure-to-accommodate claim based on that issue because there is no evidence that she requested a plausibly reasonable accommodation with regards to the bracelet. And Plaintiff provides no evidence that keeping juice or a sweet just outside the food court at the supervisor's station was not a reasonable accommodation for her need "to have access to juice while at work." *See* SOF 16, 33.[20] Therefore, Plaintiff fails to establish a prima facie case that Defendant failed to provide a reasonable accommodation. Summary judgment is appropriate for Defendant on this claim because no reasonable jury could find for Plaintiff.

### 4.      Placement on Unpaid Leave and Termination

Plaintiff's last ADAAA claims are that Defendant discriminated against her by placing her on unpaid leave and ultimately terminating her despite there being accommodations that would have let her continue working. Doc. 53 at 16. As far as the Court can discern, Plaintiff asserts both failure-to-accommodate and disparate-treatment theories.[21]

### i.      Failure to Accommodate

Plaintiff argues Defendant improperly placed her on an unpaid leave of absence rather than accommodating her thirty-pound weight restriction in July 2019 and again in February 2020 before

---

[20] Plaintiff fails to controvert this fact. She cites to deposition testimony that discusses her dissatisfaction with keeping items in her locker. She provides no evidence that keeping items at the supervisor's station was not a reasonable accommodation.

[21] The Court focuses on Plaintiff's lifting, carrying, pushing, and pulling restrictions in considering her claim that she was wrongfully placed on unpaid leave and terminated. As noted above, the pretrial order contains almost nothing regarding Plaintiff's diabetes. And to the extent she claims that her diabetes was not accommodated, the Court has rejected that claim.

eventually terminating her in May 2021. *See* Doc. 60 at 55-56.[22] Defendant argues summary judgment is appropriate because "[a]t various times during her employment, [Plaintiff's] 30-pound lift/carry restriction and the 30-pound push/pull restriction prevented her from performing the essentials functions of her Food Court Assistant Job," and she was therefore not a qualified individual for purposes of her ADAAA claim. Doc. 55 at 35. It is undisputed that at the time she was on unpaid leave in July 2019, Plaintiff had a permanent work restriction preventing her from lifting, carrying, pushing, or pulling objects weighing thirty pounds or more. SOF 19. It is also undisputed that Plaintiff had a thirty-pound lift, carry, push, and pull restriction in February 2020. SOF 75.

A prima facie failure-to-accommodate claim requires that a plaintiff show that (1) she was disabled, (2) she was otherwise qualified, (3) she requested a plausibly reasonable accommodation, and (4) the defendant refused to accommodate the disability. *Aubrey*, 975 F.3d at 1005. Thus, to sustain failure-to-accommodate claims under the ADAAA, a plaintiff must be a "qualified individual." 42 U.S.C. § 12111(8); *see also Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118-19 (10th Cir. 2004).

A "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." § 12111(8). A court determines whether an individual is qualified by examining (1) whether the individual can perform the essential functions of the job without accommodation; and (2) whether any reasonable

---

[22] There is scant, if any, evidence that Plaintiff's work restrictions were the reason she was off work in July 2019. Plaintiff was initially given a temporary assignment. SOF 23. Then she requested time off for vacation and then an injury incurred on vacation from July 12 until July 24. *See* SOF 24. Her job assessment meeting occurred during that absence from work, on July 22. SOF 25. After being informed that she would be placed on unpaid leave as an accommodation, she submitted a new work restriction form on July 23 and returned to work on July 24. SOF 42-43.

accommodation by the employer would enable the individual to perform those functions. *Mason*, 357 F.3d at 1118.

> The employee bears the burden of showing her ability, with or without reasonable accommodation, to perform the essential functions of her job. But it is the employer who bears the burden of demonstrating that a job function is essential because, after all, the employer is in the best position to do so.

*Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 877 (10th Cir. 2021) (citations omitted). And "courts must give consideration to the employer's judgment as to what functions of a job are essential." *Id.* (citation omitted). "An employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." *Id.* at 878.

The issue for this case boils down to whether pushing or pulling over thirty pounds was an essential element of Plaintiff's food court assistant position. Defendant has presented a strength chart for the food court assistant position and pointed to evidence that Defendant considered those strength requirements to be essential job functions in the food court. These requirements include pushing and pulling more than 30 pounds.

The only admissible evidence Plaintiff presents in response is evidence that the heaviest item in the food court was a box of dough weighing no more than twenty-five pounds. *See* Riley Dep. at 42:16-43:2; *see also* Montesinos-Cook Dep. at 31:9-21.[23] But Plaintiff's evidence and argument about <u>lifting</u> a box of dough does not controvert that an essential function of her position was being able to <u>push and pull</u> in excess of thirty pounds. Plaintiff was unable to push or pull thirty pounds at the time of her July 2019 job assessment meeting and in February 2020. Thus, she

---

[23] She also relies on the disputed declarations to argue that management has accommodated employees in the past by assisting with lifting and putting away bulky items. Doc. 60 at 6. Again, the Court does not consider these declarations. But the Court notes that these declarations do not provide evidence about pushing and pulling.

was unable to perform the essential functions of the job and was not qualified to perform the food court assistant role. No reasonable jury could conclude otherwise.

Further, the only accommodation request properly before the Court with regards to Plaintiff's push-pull restriction is her request that another employee handle proofing and putting racks of dough in the cooler. SOF 37.[24] But being excused from the essential functions of a job is not a reasonable accommodation request. Therefore, Plaintiff has not established a prima facie failure-to-accommodate claim because she has not demonstrated that she could perform the essential functions of her position with reasonable accommodation or that she requested a plausibly reasonable accommodation. Again, no reasonable jury could conclude otherwise.

### ii.    Disparate Treatment

Plaintiff argues in her opposition to summary judgment that she is also entitled to recover on a disparate-treatment theory. The Court assumes without deciding that such a claim is preserved in the pretrial order and that it relates to Plaintiff being placed on unpaid leave and being terminated.

As a preliminary matter, Plaintiff argues that there is direct evidence of discrimination because Defendant placed her on an unpaid leave of absence when she had a thirty-pound weight restriction.[25] Doc. 60 at 55. Direct evidence would excuse Plaintiff from establishing discrimination under the *McDonnell Douglas* framework. *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022). But "evidence is direct only if it proves the existence of a fact in issue without inference or presumption." *Id.* (citation and quotation marks omitted). Being

---

[24]   Again, it is Plaintiff's burden to clearly controvert facts. D. Kan R. 56.1(b)(1). Plaintiff has not met her burden as to fact statement 37 as stated above.

[25]   Plaintiff also makes this argument about her need for juice. Doc. 60 at 55. But as mentioned above, Plaintiff did not preserve this claim in the pretrial order. And even if she had, she has not established any adverse action connected with her need for juice access. Plaintiff does not reference her termination in this portion of her argument.

placed on leave because of an employer's alleged inability to accommodate restrictions is not direct evidence of discrimination—it's simply Plaintiff's <u>claim</u> of discrimination. Direct discrimination "demonstrates on its face that the employment decision was reached for discriminatory reasons." *Id.* (citation omitted). An example of direct discrimination in the Title VII context is a decisionmaker saying in an interview that women had an inferior knowledge about and an inferior ability to sell tools. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1217 (10th Cir. 2013).

Direct evidence of discrimination is incredibly rare. Here, there is nothing so blatant as to constitute direct evidence of discrimination. There was no decisionmaker saying that Plaintiff was placed on unpaid leave simply because she was disabled. Rather, the stated reason was Defendant's inability to accommodate Plaintiff's restrictions. Thus, any claim by Plaintiff in this regard is circumstantial and must proceed under the *McDonnell Douglas* framework.

A plaintiff must first raise a genuine issue of material fact as to each element of her prima facie case under *McDonnell Douglas*. *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 989 (10th Cir. 2021). A plaintiff establishes a prima facie case under the ADAAA by showing that "(1) she is disabled within the meaning of the [ADAAA], (2) she is qualified to perform the essential functions of the job with or without accommodation, and (3) she suffered an adverse employment action because of her disability." *Id.* at 989-90. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for the adverse action. *See id.* at 990. If the defendant does so, the burden shifts back to the plaintiff to show the defendant's reason was pretextual. *Id.* To show pretext, the plaintiff must establish that the employer's proffered reasons "were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." *Ford*, 45 F.4th at 1216.

Here, much like the failure-to-accommodate claim, Plaintiff has failed to show that she was qualified to perform the essential functions of the food court assistant position. So any disparate-treatment claim also fails on that point.

Moreover, regarding Plaintiff's termination, Defendant argues that Plaintiff cannot establish discrimination. *See* Doc. 55 at 42-43. The Court agrees. The undisputed facts show that Defendant offered Plaintiff a position on the front end in January 2020 when Plaintiff only had a thirty-pound lifting restriction. Plaintiff declined. In April 2021, after Defendant inquired when Plaintiff could return to work with or without accommodations, Plaintiff indicated that regardless of her disabilities, she did not have an anticipated return date due to Covid-19. Therefore, Plaintiff was terminated well over a year after she went on leave in November 2019 and after multiple attempts by Defendant to return her to work. Plaintiff has no way to establish an inference of causation, and therefore any disability discrimination with regards to her termination must fail for this additional reason.

Finally, Defendant further argues that Plaintiff can't establish pretext on any liability theory. *See id.* at 32, 41 (arguing Plaintiff can't establish pretext on any theory of recovery and that it placed Plaintiff on a leave of absence as an accommodation). Defendant argues that it placed Plaintiff on unpaid leave when it could not accommodate her restrictions any other way. Plaintiff argues that other employees with more severe restrictions were accommodated (in which she relies in large part on the disputed declarations). Doc. 60 at 64.

A plaintiff can show pretext by showing differential treatment of similarly situated employees. *Roberts v. Int'l Bus. Machines Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013) (analyzing under the ADEA). "But to provide a basis for reliable comparison, the other employee must, in fact, be similarly situated—that is, reporting to the same supervisor, held to the same standards,

and afoul of those standards to at least the same degree." *Id.* And a plaintiff bears the burden of producing evidence that other employees were similarly situated. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 n.4 (10th Cir. 2007) (analyzing under the ADEA).

Here, the only admissible evidence Plaintiff relies on to show pretext is an employee at her warehouse who was transitioned out of the food court as an accommodation for his sensitivity to cold temperatures. This employee is not similarly situated to Plaintiff. While he may have had the same standards and supervisor, his restrictions were nowhere near that of Plaintiff's.[26] Plaintiff has not shown that she could have performed the job that the cold-sensitive employee transitioned to, nor has she indicated what open lateral position could have accommodated her restrictions. No reasonable jury could conclude that Defendant's inability to accommodate Plaintiff's weight restrictions was a pretext because Defendant accommodated another employee's temperature sensitivity. Plaintiff's argument on pretext is a complete non sequitur. The Court also notes that Plaintiff points to no admissible evidence of an individual with no disabilities getting better treatment. *See Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1312 (10th Cir. 2017) ("[The plaintiff] has shown no evidence of disparate treatment—*viz.*, similarly situated employees outside of the relevant protected groups were treated more favorably than she was.").

Ultimately, Plaintiff's disparate treatment claims must also fail because she has not shown Defendant's stated reasons for placing her on unpaid leave or terminating her were a pretext for discrimination. No reasonable jury could conclude otherwise.

---

[26] Further, even if the Court considered the evidence from the disputed declarations, Plaintiff has not met her burden to show that these employees, who worked in different warehouses, with different supervisors, with different restrictions, were similarly situated to her. For example, Plaintiff points to no other employee with her pushing and pulling restrictions.

### E.      Retaliation Claims

Plaintiff argues that she was retaliated against in violation of Title VII, the ADAAA, and the ADEA. Doc. 53 at 16. Plaintiff's claims here are—again—a moving target. In the pretrial order, Plaintiff claims that she was retaliated against for reporting sexual harassment of a coworker and for seeking a disability accommodation for her diabetes, chronic back issues, and other ailments by being denied promotional opportunities and by Defendant refusing to let her continue working. *Id.* She also argues that she reported age discrimination because younger employees received a benefit (working an LPT schedule) that she did not receive. *Id.*[27]

Plaintiff switches angles in the opposition to summary judgment. She now argues that her protected activity was asking not to push carts and filing an EEOC charge and this lawsuit. She argues that her failure to get the vault clerk position and her termination were in close temporal proximity to these protected activities, which is sufficient to infer retaliation. Doc. 60 at 72-73.

To establish a retaliation claim under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a prima facie case by showing: "(1) she was engaged in a protected activity, (2) she was subjected to an adverse employment action, and (3) a causal connection between the protected activity and the adverse action." *Edmonds-Radford*, 17 F.4th at 994.

Here, Plaintiff has not established any protected activity to support a retaliation claim under either Title VII or the ADEA. She claims in the pretrial order that not receiving an LPT schedule is tantamount to reporting age discrimination. This is untrue, and she points to no other evidence of retaliation based on ADEA-protected activity. She has also provided no evidence that she reported sex-based harassment or otherwise made management aware of any harassment, contrary

---

[27] Plaintiff describes her inability to use accessible parking as "retaliatory conduct" in her factual contentions in the pretrial order. Doc. 53 at 6. But she does not refer to her parking access her in her retaliation claim section in the pretrial order, nor does she develop this theory in her opposition to summary judgment.

to her suggestions in the pretrial order. In sum, she points to <u>no complaints</u> to her superiors about any sex or age discrimination. Thus, any Title VII or ADEA retaliation claim must fail.

With regards to Plaintiff's most-current two theories of retaliation under the ADAAA (i.e., asking not to push carts and filing an EEOC charge and this lawsuit), those claims likewise fail. As to her contention that she was denied the vault clerk position in retaliation for protected activity, Plaintiff did not exhaust a retaliation claim for failure-to-promote, and Defendant has properly raised the failure-to-exhaust affirmative defense. *See supra* § III.A. Finally, Plaintiff's theory that she was terminated for filing her discrimination charge and lawsuit was raised for the first time in the response brief and was not preserved in the pretrial order. *See* Doc. 53 at 16 ("[Plaintiff] alleges she complained . . . about not being selected for various positions and job duties, . . . sought an accommodation due to her disabilities . . . As a result of Hunter's complaints, . . . she was ultimately terminated."). Even liberally construed, the pretrial order does not encompass Plaintiff's claim that she was terminated for filing an EEOC charge or this lawsuit. *Zenith Petroleum Corp.*, 656 F. App'x at 887 ("A district court has authority to sua sponte confine the litigation to the claims and issues identified in the pretrial order."). Accordingly, Defendant is entitled to summary judgment on any retaliation claim asserted by Plaintiff.[28]

**F.    Motion to Strike**

Defendant has separately moved to strike the declarations of Roberson, Hines, and Ogle. Doc. 61. Plaintiff relies on these declarations in response to Defendant's motion for summary

---

[28] The Court need not reach the parties' arguments about damages based on the above rulings, which grant Defendant summary judgment on all of Plaintiff's claims. And even if Plaintiff were able to establish a question of fact on one of her liability theories, Defendant would be entitled to summary judgment for any damages after March 14, 2020, because the undisputed facts show that Plaintiff had "not returned to work 'because of Covid-19 as of March 14, 2020.'" SOF 89. Thus, the pandemic supersedes the reason(s) Plaintiff was on unpaid leave in the first place. Furthermore, Plaintiff is not entitled to any damages related to her unexhausted failure-to-promote claim(s) regarding the vault clerk position. Finally, Plaintiff fails to meaningfully respond to Defendant's summary judgment motion on punitive damages. Therefore, Defendant would be entitled to summary judgment on these aspects as well.

judgment. Defendant argues that Plaintiff failed to disclose the declarants in her Rule 26 disclosures and the failure was not substantially justified or harmless. *Id.* at 3. Plaintiff contends that her disclosures were sufficient because she disclosed "[a]ll individuals identified during the course of discovery or mentioned in any testimony," and any failure to disclose was harmless error because Defendant's counsel asked about Hines and potentially Roberson when deposing Plaintiff, and Ogle was mentioned by first name by another deponent. *Id.* at 2-4.

"The mere identification of a witness during discovery is insufficient to relieve a party of its duty to supplement its Rule 26(a)(1)(A) initial disclosures." *Glob. Force Ent., Inc. v. Anthem Wrestling Exhibitions, LLC*, 468 F. Supp. 3d 969, 972 (M.D. Tenn. 2020). Plaintiff's argument that Roberson, Hines, and Ogle were properly disclosed because their names were mentioned—at times only in part—during depositions strains credulity. A passing mention of an individual in a deposition, without a correct last name in one instance and without any last name at all in another, cannot be transformed into a disclosure by including catch-all language covering anyone "mentioned in any testimony." Moreover, Defendant's potential knowledge of the declarants' existence is insufficient to relieve Plaintiff of her duty to update disclosures in this case because even if Defendant knew the identity of declarants, it did not know Plaintiff planned to use them as witnesses for the reasons now offered. *Clean Harbors, Inc. v. CBS Corp.*, 875 F. Supp. 2d 1311, 1317 (D. Kan. 2012) ("[J]ust because CBS knew of DeJong does not mean that it knew Clean Harbors would rely on DeJong as a witness."). Therefore, the Court holds that Plaintiff was required to disclose the declarants under Rule 26 and that she failed to do so. The Court turns to whether the failure was substantially justified or harmless.[29]

---

[29] Plaintiff argues that Defendant also provides evidence that was not properly disclosed. Doc. 62 at 2. What Defendant may have failed to disclose is not the subject of a current motion. But the Court's ruling on the current motion to strike should serve as a cautionary tale for both parties going forward.

"The party who failed to make the required disclosure has the burden to demonstrate substantial justification or the lack of harm." *Est. of McDermed v. Ford Motor Co.*, 2016 WL 1298096, at *3 (D. Kan. 2016). Here, Plaintiff does not argue that any failure to disclose was justified, so the Court examines harmfulness. The following factors are considered in determining harm: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of that party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the bad faith or willfulness of the party offering the testimony. *Harris v. Remington Arms Co., LLC*, 997 F.3d 1107, 1112 (10th Cir. 2021).

The first factor considers the degree of prejudice or surprise to Defendant. Plaintiff took these declarations in November and December, after discovery had closed and after Defendant had filed its summary-judgment motion. By waiting until <u>after</u> Defendant filed for summary judgment to identify these three individuals, Plaintiff significantly prejudiced Defendant because Defendant was not aware of evidence Plaintiff intended to rely on. Defendant was also deprived of inquiring into what evidence these individuals have. Thus, this factor weighs in favor of striking the declarations.

The second factor also weighs in favor of striking the declarations. Given that the declarations came <u>after</u> Defendant moved for summary judgment, Defendant has been deprived of evidence at a <u>critical point</u> in the case. Reopening discovery or delaying summary-judgment ruling would also likely entail significant extra cost to Defendant and delay resolution of this case. Thus, to a large degree, the prejudice cannot be cured.

As to the third and fourth factor, the inclusion of this testimony would likely disrupt the trial because reopening discovery would mean rescheduling the trial. *See Clean Harbors*, 875 F. Supp. 2d at 1317 (finding harm based in part on the potential need to reschedule the trial). And

finally, Plaintiff's eleventh-hour disclosure raises questions of bad faith, or at the very least, unfair gamesmanship or sloppiness. There is no evidence that Plaintiff was unaware of declarants until recently or that Plaintiff could not have taken their declarations earlier. Thus, the factors universally indicate that Plaintiff's failure to disclose is harmful and that the declarations of Roberson, Hines, and Ogle must be struck. The Court, however, in its discretion declines to impose sanctions because Plaintiff had at least a colorable argument as to whether her residual disclosures were sufficient to meet her Rule 26 obligations.[30]

## IV.   CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 54) is GRANTED. The Clerk shall enter judgment in favor of Defendant.

THE COURT FURTHER ORDERS that Defendant's Motion to Strike (Doc. 61) is GRANTED but its request for sanctions is DENIED.

IT IS SO ORDERED.

Dated: March 31, 2023                         /s/ Holly L. Teeter
                                              HOLLY L. TEETER
                                              UNITED STATES DISTRICT JUDGE

---

[30] As the Court has already noted, nothing in the declarations creates a genuine issue of fact as to any of Plaintiff's claims. Therefore, even if the Court had denied the motion to strike and considered the declarations, the outcome of the case would be the same.